## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KATHRYN POTTER on behalf of herself, and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> POTNETWORK HOLDINGS, INC., DIAMOND CBD, INC., and FIRST CAPITAL VENTURE CO., <br><br> Defendants. | Civil Action No.: 19-cv-24017-RNS <br><br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Kathryn Potter, individually and on behalf of all others similarly situated, files this Amended Class Action Complaint and alleges as follows:

### INTRODUCTION AND BACKGROUND

1. This is a civil action seeking monetary damages, restitution, and injunctive relief from Defendants PotNetwork Holdings, Inc. ("PotNetwork"), Diamond CBD, Inc. ("Diamond CBD"), and First Capital Venture Co. ("First Capital") (collectively, "Defendants") arising from the purchase of cannabidiol ("CBD") products manufactured, distributed, and sold by Defendants based upon their misrepresentations of the quantity of CBD contained in those products.

2. Defendants sell a variety of CBD products, including, but not limited to, "CBD Oil," "CBD Edibles," "CBD Capsules," "CBD Drinks," "CBD Edibles," "CBD Vape Oil," as well as "Bath & Body" and "Cosmetics" products, (collectively, the "Products").

3. CBD is one of the naturally occurring cannabinoids found in cannabis plants, including hemp.

4. Many CBD products are derived from hemp. CBD generally does not contain significant amounts of tetrahydrocannabinol ("THC"), which is marijuana's psychoactive compound, and CBD has been touted as having numerous positive health effects.

5. Specifically, CBD products have been used to treat medical conditions such as anxiety, sleep disorders, and chronic pain.

6. Today, CBD is commonly used in combination with a number of products including food and dietary supplements. CBD is generally administered orally as either a capsule or dissolved in an oil solution that may be mixed with other ingredients, but is also administered by inhalation as a smoke or vapor.

7. In 2018, Congress passed the Agriculture Improvement Act of 2018, Pub. L. 115-334, known as the "Farm Bill," which legalized, at the federal level, the production of industrial hemp, from which CBD can be derived. The 2018 Farm Bill removed hemp from the definition of marijuana in the Controlled Substances Act, thereby making it legal to grow hemp that contains less than 0.3% THC. 7 U.S.C. § 1639o-1639s. The Farm Bill delegated broad authority to the states to regulate the production and distribution of hemp, which Florida began in June 2019, with its State Hemp Program.

8. Since passage of the Farm Bill, the CBD industry has quickly become a billion dollar plus industry.

9. Unfortunately, as is often the case with emerging industries subject to minimal regulation, the CBD market is ripe for exploitation by unscrupulous businesses, and it has been compared to the "Wild West."[1]

---

[1] Dennis Thompson, *CBD Oil: All the Rage, But Is It Safe & Effective?*, WebMD HealthDay Reporter (May 7, 2018), https://www.webmd.com/pain-management/news/20180507/cbd-oil-all-the-rage-but-is-it-safe-effective#1 (last accessed September 26, 2019).

10. There has been no shortage of news reports on CBD companies committing all sorts of malfeasance—from some companies selling CBD products with significant levels of THC that cause users to fail drug tests, to other companies making wholly unsubstantiated health claims. Companies are also misrepresenting the amount of CBD in their products.

11. Defendants are a market leader in this Wild West of CBD products, having sold as much as $200,000 in Products at a single exposition in February 2019.[2] News reports claim it is one of the top 10 CBD sellers in the nation.[3]

12. Unfortunately, Defendants' success has been partially fueled by misrepresenting the levels of CBD contained in the Products.

13. To the detriment of consumers, their Products do not contain the promised levels of CBD. Specifically, Defendants misrepresent the amount of CBD contained in the Products on the product labeling and packaging and they make the same misrepresentation on Diamond CBD's website, where consumers can directly purchase the Products.

14. On information and belief, Defendants are selling the Products with a significantly lower amount of CBD than represented, and are therefore cheating every consumer who buys the Products by that amount.

---

[2] *Diamond CBD Books Over $200,000 in Orders in 3 Days at Tobacco Plus Expo in Las Vegas*, Press Release (Feb. 19, 2019), https://markets.businessinsider.com/news/stocks/diamond-cbd-books-over-200-000-in-orders-in-3-days-at-tobacco-plus-expo-in-las-vegas-1027964543 (last accessed September 26, 2019).

[3] *Game on: The race for CBD market share*, Venture Beat (Mar. 29, 2019), https://venturebeat.com/2019/03/29/game-on-the-race-for-cbd-market-share/ (last accessed September 26, 2019).

15.     CBD is the active ingredient in the Products at issue here.[4] Thus, any discrepancy between the listed CBD amount and the actual CBD amount misrepresents what the consumer purchases and means that the consumer does not receive what was purchased.

16.     As reflected in the image below, the package and label of the 550 mg version of Diamond CBD's CBD Oil both prominently claim a CBD level of 550 mg per fl. oz.—even though that amount is materially inaccurate.



---

[4] *See e.g.*, https://www.diamondcbd.com/products/unflavored-diamond-cbd-oil-550mg (listing CBD as the first ingredient on Diamond CBD's website), (last accessed Sept. 26, 2019).

17. Similar inaccurate information about the amount of CBD in the 550 mg version of Diamond CBD's CBD Oil appears throughout Diamond CBD's website. Defendants purport that one bottle of Diamond CBD contains 550 mg of CBD[5], when it actually contains less.

18. Florida's recently enacted State Hemp Program underscores the importance of having correct product information about the amount of CBD in hemp-based products, including the Products. That statute provides, *inter alia*, that "[h]emp extract may only be distributed and sold in the state if the product… [i]s distributed or sold in packaging that includes… [a] scannable barcode or quick response code linked to the certificate of analysis of the hemp extract by an independent testing laboratory." Fla. Stat. § 581.217. Florida also has similar rules related to product packaging for medical marijuana distributed in the state. *See* Fla. Stat. § 381.986 (11)(f).

19. While Plaintiff is not seeking to enforce any of the state regulations, certainly they are illustrative of the importance of accurate labeling of CBD products such as those at issue in this action.

20. Despite Defendants' affirmative representations on the packaging and labeling of the Products that they contain the stated levels of CBD—which indicates to reasonable consumers that the Products will, in fact, contain the amount of CBD represented—the Products fail to deliver the amount of CBD promised.

21. Plaintiff and the putative members of the Classes (defined below) have been and will continue to be deceived or misled by Defendants' false and deceptive packaging and labeling and representations.

---

[5] *See* https://www.diamondcbd.com/products/unflavored-diamond-cbd-oil-550mg (description of CBD Oil on Diamond CBD's website, last accessed September 27, 2019.)

22. Defendants' product packaging and labeling lead reasonable consumers to believe that the Products contain the amount of CBD promised on the packaging and labeling for the Products.

23. To the detriment of consumers, the Products' labeling and packaging are false and misleading as the Products do not contain the amount of CBD promised.

24. The false belief created by the Products' labeling and packaging is a material factor in influencing consumer purchase decisions.

25. Had Plaintiff and the putative members of the Classes known the truth about the Products, they would not have purchased the Products and/or would not have paid the prices they paid for the Products.

26. Plaintiff and each member of the putative Classes were harmed by purchasing the Products because they did not receive what they paid for, and, as a result, lost money and property.

27. Therefore, Plaintiff, individually and on behalf of the Classes, seek damages, restitution, injunctive relief, and other available relief against Defendants for their (i) unjust enrichment and (ii) violation of the Florida Deceptive and Unfair Trade Practice Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").

## PARTIES, JURISDICTION AND VENUE

28. Plaintiff Kathryn Potter is a citizen of Florida who resides in Miami, Florida.

29. PotNetwork is incorporated in Colorado with its headquarters in Fort Lauderdale, Florida.

30. PotNetwork's primary business is conducted through its subsidiary, First Capital, whose subsidiary, Diamond CBD is engaged in the development and sales of hemp-derived CBD containing products.

31. Diamond CBD is incorporated in Delaware with its headquarters in Fort Lauderdale, Florida.

32. First Capital is incorporated in Florida with its headquarters in Fort Lauderdale, Florida.

33. This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative classes exceed $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are comprised of over one hundred members, and because at least one of the members of the proposed classes is a citizen of a different state than Defendants.

34. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial District because Defendants are citizens of Florida and maintain their principal places of business within this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District, Defendants distributed, advertised, and sold the Products at issue within this District, and documents and witnesses will be located within this District.

## PLAINTIFF'S EXPERIENCE

35. Plaintiff bought from the Diamond CBD website, in a single purchase order, Unflavored Diamond CBD Oil – 550 mg, Diamond CBD Gummies – Infused Gummy Worms – 75mg, and Chill Gummies – CBD Infused Watermelon Slices – 150mg, the prices for which totaled $119.97.

36. Plaintiff reviewed the promises on the product labels when purchasing and relied upon those promises in making her purchase decision.

37. Had those products not displayed the promises that they contained the specified amount of CBD, Plaintiff either would not have made her purchase of the Products or would not have been willing to pay a premium for her purchase. If Plaintiff could rely upon the truthfulness of Defendants' labeling, she would continue to purchase Defendants' Products in the future.

## CLASS ACTION ALLEGATIONS

38. Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), brings this action on behalf of the following Classes:

   (a) Nationwide Class: All people in the United States who purchased the Products for personal use within the applicable statute of limitations period.

   (b) Florida Class: All people who purchased the Products for personal use within the state of Florida and within the applicable statute of limitations period.

39. Excluded from the Classes are Defendants, their subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

40. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

41. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Defendants acted on grounds generally applicable to the Classes. Such common legal or factual questions include, but are not

limited to:

    (a) The actual amount of CBD in the Products;

    (b) Whether Defendants falsely and/or deceptively advertised the Products;

    (c) Whether Defendants were unjustly enriched by its conduct; and

    (d) The appropriate measure of damages.

42. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can largely be ascertained resort to Defendants' records.

43. It is impracticable to bring the Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

44. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Defendants, as described herein.

45. Plaintiff is an adequate representative of the Classes in that Plaintiff bought the Products and was damaged as a result of Defendants' deceptive conduct. In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers for product defects, breach of warranty on consumer products, and misrepresentations in consumer product labeling;

      b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

      c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

      d) Plaintiff's legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

46. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

47. Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

48. All conditions precedent to bringing this action have been satisfied and/or waived.

**COUNT I**
**UNJUST ENRICHMENT**
**(By Plaintiff on Behalf of the Nationwide Class)**

49. Plaintiff realleges and incorporates herein paragraphs 1 through 48, as if fully set forth herein.

50. Plaintiff, and all members of the proposed Nationwide Class, conferred a benefit upon Defendants, which Defendants had knowledge thereof. Namely, Plaintiff and members of the Nationwide Class paid monies to Defendants and their authorized sellers for the Products.

51. Defendants voluntarily accepted and retained the monetary benefit conferred under circumstances that make it unjust and inequitable for Defendants to retain it without paying Plaintiff and the Nationwide Class members the value thereof. Specifically, Defendants retained the benefit despite the fact that the Products did not contain the claimed amount of CBD, including the amount listed in the Products' labels and packaging.

52. When purchasing the Products, Plaintiff and the Nationwide Class members

reasonably believed that the Products would contain the claimed amount of CBD, including the amount listed on the labels and packaging.

53. Plaintiff and the Nationwide Class members received less than what they paid for in that the Products did not contain the claimed amount of CBD, including the amount listed in Products labels and packaging.

54. Had Plaintiff and the Nationwide Class members known about the inaccuracy of the claimed amount of CBD, including the amount listed on the labels and packaging, they would not have purchased the Products or would have paid less for the Products.

55. Defendants should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through their wrongful conduct.

**COUNT II**
**VIOLATION OF FDUTPA, FLA. STAT. §§ 501.201,** *et seq.*
**(Plaintiff, Individually, and on Behalf of the Florida Subclass)**

56. Plaintiff realleges and incorporates herein paragraphs 1 through 48, as if fully set forth herein.

57. Plaintiff and members of the Florida Subclass are authorized to bring this Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, pursuant to Florida Statute § 501.211, which creates a private right of actions for consumers including Plaintiff Potter and members of the Florida Subclass, who may seek declaratory relief, injunctive relief, actual damages, and attorneys' fees and costs as provided in Fla. Stat. § 501.2105. All such relief is sought in this count, and Plaintiff and all members of the Florida Subclass are entitled to such relief.

58. Fla. Stat. § 501.204(1) prohibits "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

59. Among other purposes, FDUTPA is intended "[t]o protect the consuming public

11

and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

60. Defendants, at all relevant times, solicited, advertised, offered, provided and distributed goods in the State of Florida, and thereby was engaged in trade or commerce as defined by Fla. Stat. § 501.203(8).

61. Plaintiff, and all members of the Florida Subclass, at all material times were consumers, as defined by Fla. Stat. § 501.203(7), and are thus entitled to seek the underlying relief.

62. Defendants engaged in unfair and deceptive acts, in violation of Fla. Stat. § 501.204, when they represented in their claims, including in the Products' labels and packaging that its Products contained specific amounts of CBD, when in fact, the Products did not contain those amounts.

63. It was reasonable for consumers, including Plaintiff and members of the Florida Subclass, to rely on Defendants' representations regarding the amount of CBD in the Products. Had they known that those representations were false and misleading, they would not have purchased the Products or would have paid less for them.

64. Defendants' unfair and/or deceptive acts were likely to deceive reasonable consumers, such as Plaintiff and members of the Florida Subclass, about the true nature of the Products, which Defendants manufacture, distribute, and sell.

65. As a direct and proximate result of Defendants' violations of the statutes referenced herein, Plaintiff and members of the Florida Subclass suffered injuries and as a result, are entitled to actual damages, declaratory and injunctive relief, and attorneys' fees and costs.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Plaintiff, Individually, and on Behalf of the Classes)

66. Plaintiff realleges and incorporates herein paragraphs 1 through 48, as if fully set forth herein.

67. Plaintiff and the members of the Classes formed a contract with Defendants at the time they purchased the Products. As part of that contract, Defendants represent on the Products' labeling and packaging, that the Products contain a certain amount of CBD. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Classes, on the one hand, and Defendants, on the other.

68. Defendants made the above-described representations to induce Plaintiff and members of the Classes to purchase the Products, and Plaintiff and the Florida Subclass members relied on the representations in purchasing the Products.

69. All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Classes.

70. Defendants breached the express warranties about the Products because, as alleged above, the Products do not contain the promised levels of CBD. Defendants breached the following state warranty laws:

A. Alaska Stat. section 45.02.313;

B. A.R.S. section 47-2313;

C. A.C.A. section 4-2-313;

D. Cal. Comm. Code section 2313;

E. Colo. Rev. Stat. section 4-2-313;

F. Conn. Gen. Stat. section 42a-2-313;

13

G. 6 Del. C. section 2-313;

H. D.C. Code section 28:2-313;

I. O.C.G.A. section 11-2-313;

J. HRS section 490:2-313;

K. Idaho Code section 28-2-313;

L. 810 ILCS 5/2-313;

M. Ind. Code section 26-1-2-313;

N. K.S.A. section 84-2-313;

O. KRS section 355.2-313;

P. 11 M.R.S. section 2-313;

Q. Mass. Gen. Laws Ann. ch. 106 section 2-313;

R. Minn. Stat. section 336.2-313;

S. Miss. Code Ann. section 75-2-313;

T. R.S. Mo. Section 400.2-313;

U. Mont. Code Anno. Section 30-2-313;

V. Neb. Rev. Stat. section 2-313;

W. Nev. Rev. Stat. Ann. section 104.2313;

X. RSA 382-A:2-313;

Y. N.J. Stat. Ann. section 12A:2-313;

Z. N.M. Stat. Ann. section 55-2-313;

AA. N.Y. U.C.C. Law section 2-313;

AB. N.C. Gen. Stat. section 25-2-313;

AC. N.D. Cent. Code section 41-02-30;

AD. ORC Ann. section 1302.26;

AE. 12A Okl. St. section 2-313;

AF. Or. Rev. Stat. section 72-3130;

AG. 13 Pa.C.S. section 2313;

AH. R.I. Gen. Laws section 6A-2-313;

AI. S.C. Code Ann. section 36-2-313;

AJ. S.D. Codified Laws, section 57A-2-313;

AK. Tenn. Code Ann. section 47-2-313;

AL. Tex. Bus. & Com. Code section 2.313;

AM. Utah Code Ann. section 70A-2-313;

AN. 9A V.S.A. section 2-313;

AO. Va. Code Ann. section 59.1-504.2;

AP. Wash. Rev. Code Ann. section 62A.2-313;

AQ. W. Va. Code section 46-2-313;

AR. Wyo. Stat. section 34.1-2-313.

71. As a result of Defendants' breaches of express warranty, Plaintiff and the other members of the Classes were damaged in the amount of the premium price they paid for the Products, in amounts to be proven at trial.

72. On October 3, 2019, Plaintiff, on behalf of herself and the other members of the Classes, sent a notice letter to Defendants which provided notice of Defendants' breach and demanded that it correct, repair, replace, or otherwise rectify the breach complained of herein. The letter also stated that if Defendants refused to do so, a complaint would be filed seeking damages. Defendants failed to comply with the letter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands judgment as follows:

a) Certifying the Classes;

b) Ordering restitution and disgorgement of all profits and unjust enrichment Defendants obtained from Plaintiff and the members of the Classes as a result of Defendants' unlawful, unfair and fraudulent business practices;

c) Awarding Plaintiff and the proposed members of the Classes damages;

d) Ordering injunctive relief;

e) Awarding statutory damages, as appropriate;

f) Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

g) Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

h) Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a trial by jury on all claims so triable.

Dated: December 17, 2019

Respectfully submitted,

/s/ *Daniel Tropin*
Daniel Tropin FBN 100424
Jeff Ostrow FBN 121452
Jonathan M. Streisfeld FBN 117447
Joshua Levine FBN 91807
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
tropin@kolawyers.com

>streisfeld@kolawyers.com
>levine@kolawyers.com
>Facsimile: 954-525-4300
>
>Melissa S. Weiner (*Pro Hac Vice*)
>mweiner@pswlaw.com
>Joseph C. Bourne (*Pro Hac Vice*)
>jbourne@pswlaw.com
>**PEARSON, SIMON & WARSHAW, LLP**
>800 LaSalle Avenue, Suite 2150
>Minneapolis, MN 55402
>Telephone: 612-389-0600
>Facsimile: 612-389-0610
>
>*Counsel for Plaintiff*
>*and the Proposed Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 17, 2019, the foregoing document was served via electronic service on all counsel of record.

>Respectfully Submitted,
>*/s/ Daniel Tropin*