United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Kathryn Potter and others,<br>Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 19-24017-Civ-Scola |
| Potnetwork Holdings, Inc. and<br>others, Defendants. | )<br>)<br>) | |

## <u>Order on Motion to Dismiss</u>

Now before the Court is the Defendants' motion to dismiss or, in the alternative, to stay the case. For the reasons set forth below, the Court **grants in part and denies in part** the motion to dismiss (**ECF No. 26**) filed by the Defendants Potnetwork Holdings, Inc. ("Potnetwork"), Diamond CBD, Inc. ("Diamond CBD"), and First Capital Venture Co. ("First Capital"). The Court further **denies** the Defendants' request for a stay.

### 1. Background

Kathryn Potter filed this Florida Deceptive Unfair Trade Practices Act ("FDUTPA") class action against the Defendants, alleging that they mislabeled their products. Specifically, Potter pleads that Defendants' products do not contain the claimed amount of cannabidiol, or CBD. PotNetwork's primary business is conducted through its subsidiary First Capital. (ECF No. 1 at ¶ 30.) First Capital's subsidiary, Diamond CBD, develops and sells hemp-derived CBD products. (*Id.*)

Potter bought unflavored diamond CBD oil, diamond CBD gummies, and chill gummies from the Diamond CBD website for $119.97. (*Id.* at ¶ 35.) According to the complaint, the Defendants are selling these and other products with a "significantly lower amount of CBD than represented." (*Id.* at ¶ 14.) As a result, Potter filed this class action lawsuit on behalf of "[a]ll people in the United States who purchased the Products for personal use" and "[a]ll people who purchased the products for personal use within the state of Florida." (*Id.* at ¶ 38.) The complaint brings unjust enrichment, FDUTPA, and breach of express warranty claims against the Defendants. (*Id.* at ¶¶ 49-72.)

### 2. Legal Standards

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

The Defendants argue that the complaint should be dismissed because (1) Potter lacks standing to bring certain claims; (2) Potter failed to state a claim upon which relief can be granted; (3) a stay pending the implementation of national regulations on CBD product labeling is appropriate. The Court will address each in turn.

### A. Standing

Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v.*

*Robbins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). For the injury to be "concrete," it must be "real" and not abstract, but it need not be "tangible." *Id.* at 1549.

"As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature." *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344, 2015 U.S. Dist. LEXIS 181103, *8 (S.D. Fla. July 21, 2015) (Dimitrouleas, J.). The Eleventh Circuit requires that in a class action suit "at least one named class representative must establish Article III standing for each class subclaim." *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Because Article III standing requires a plaintiff to establish that he has suffered an injury-in-fact, a class plaintiff generally "cannot raise claims relating to those other products which he did not purchase." *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103 at *5 (S.D. Fla. Sept. 13, 2013) (Cohn, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### i. Products Not Purchased

In their motion to dismiss, the Defendants argue that Potter lacks standing to sue on behalf of consumers who purchased products from the Defendants that she did not buy. In other words, they argue that Potter can only sue for damages incurred by the alleged mislabeling of the products that she bought. The Court agrees that Potter cannot bring these claims pertaining to products that she did not buy.

Generally, named class plaintiffs must demonstrate that they have suffered a personal injury. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976). "[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." *Wooden v. Bd. Of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001). Many courts in this district have found that a plaintiff in a consumer class action lacks standing to challenge the marketing of a non-purchased product because the plaintiff has suffered no injury-in-fact. *See Snyder v. Green Roads of Fla. LLC*, -- F. Supp. 3d --, 2020 WL 42239 (S.D. Fla. Jan. 3, 2020) (Ungaro, J.) (the Plaintiffs lack standing to sue for damages incurred due to mislabeling on CBD products they did not purchase); *Daaper v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the Neutrogena products he did not purchase because he

cannot conceivably allege any injuries from products that he never purchased or used. Therefore, all of Plaintiff's claims related to unpurchased products are dismissed."); *Toback*, 2013 WL 5206103 at *5 (plaintiff "cannot raise claims relating to other products which he did not purchase").

As noted by this Court and other courts in the Southern District of Florida, there is "some uncertainty or disagreement in the law on the issue" of whether a plaintiff can assert claims on behalf of class members who purchased different products based on a theory that the products are essentially the same. *See Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1179 (S.D. Fla. 2019) (Scola, J.) (internal quotations omitted). In *Heuer v. Nissan*, this Court held that where the plaintiff alleged that the defect was "materially identical" from product to product, the plaintiff had standing, at the motion to dismiss stage, to pursue claims on behalf of class members who purchased different products. 2017 WL 3475063, at *5 (S.D. Fla. Aug. 11, 2017) (Scola, J.). The plaintiff alleged that the dashboards contained within the same model car from different years were materially identical. *Id.* Therefore, taking the allegations as true, the dashboards were the same product and the plaintiff had standing to pursue claims on behalf of the class for all of the dashboards.

However, this exception does not apply to Potter's claims. Potter has certainly not pled sufficient facts to demonstrate that the products are "materially identical" to each other; instead, she has pled facts that demonstrate the opposite. The Complaint states that the Defendants sell "a variety of CBD products" including CBD oil, CBD edibles, CBD capsules, CBD drinks, CBD vape oil and Bath & Body and Cosmetics products. (ECF No. 22 at ¶ 2.) These products are clearly not "essentially the same." *See Heuer*, 2017 WL 3475063 at *6 ("Construed in the light most favorable to the plaintiff, Heuer has not alleged that the different model years of the GT-R are substantially similar products, but rather has alleged that they are the *same* product."). Therefore, Potter does not have standing to bring claims relating to products that she did not buy.

### ii. Injunctive Relief

The Defendants also argue that Potter has failed to allege a prospective injury which would confer standing to pursue injunctive relief. (ECF No. 26 at 6-7.) Plaintiffs respond by pointing to the following allegations: "[i]f Plaintiff could rely upon the truthfulness of Defendants' labeling, she would continue to purchase Defendants' products in the future." (ECF No. 22 at ¶ 37.) This allegation is insufficient to establish that there is a real and immediate threat of future injury, and therefore Potter lacks standing to pursue an injunction.

"[T]o satisfy Article III, a Plaintiff pursuing injunctive relief must seek to redress a real and immediate threat of future injury, and past harm will not

suffice." *Wasser v. All Market, Inc.*, 329 F.R.D. 464, 470 (S.D. Fla. 2018) (Scola, J.). "The injury-in-fact demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future.'" *Ohio State Troopers Association, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1223 (S.D. Fla. 2018) (Ungaro, J.) (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013)). Potter has not alleged that there is a likelihood of future injury. Indeed, Potter's allegation makes clear that she will not purchase the Defendant's products in the future due to their mislabeling. *Snyder*, 2020 WL 42239 at *4 (finding that the Plaintiffs lack standing despite an allegation that they would continue to purchase the Defendant's products if they could rely on the truthfulness of the Defendant's labeling). Thus, Potter lacks standing to assert a claim for injunctive relief.

## B. Failure to State a Claim

### i. FDUPTA

The Defendants argue that Potter failed to state a claim for FDUTPA on two grounds: first, because she did not sufficiently allege that she incurred actual damages, and second, the FDUTPA claims are immunized by the safe harbor provision because the inaccurate labeling of the products is specifically permitted by federal regulations. The Court addresses each in turn.

### a. Actual Damages

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. 501.204(1). "There are three elements of a FDUTPA claim for damages: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (King, J.) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). Actual damages under FDUTPA must "directly flow from the alleged deceptive act or unfair practice." *Id.* at 1361. "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or the compensation for subjective feelings of disappointment." *Id.*

Actual damages are generally measured by subtracting the "difference in market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Reilly v. Chipotle Mexican Grill, Inc.*, 711 Fed. App'x 525, 529 (11th Cir. 2017). Here, CBD

products with less CBD are almost certainly less valuable than those with higher levels of CBD. CBD has "been touted as having numerous positive health effects." (ECF No. 22 at ¶ 4.) CBD has been used to treat conditions such as "anxiety, sleep disorders, and chronic pain." (*Id.* at ¶ 5.) In selling the products with significantly less CBD, the Defendants "are cheating every consumer who buys the products by that amount." (*Id.* at ¶ 14.) Moreover, Potter alleges that "had the products not displayed the promises that they contained the specified amount of CBD, Plaintiff either would not have made her purchase of the products or would not have been willing to pay a premium for her purchase." (ECF No. 22 at ¶ 37.) Therefore, Potter has sufficiently alleged that she incurred actual damages.

### b. Safe Harbor

FDUPTA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). The Defendants argue that FDUPTA's safe harbor immunizes it from liability because its labelling adheres to national uniform standards contained in the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 343-1, which amended the Food Drug and Cosmetic Act of 1938, 21 U.S.C. §§ 301-399i. Specifically, the Defendants argue that the federal regulation provides that the quantity of CBD that the product actually contains must contain at least 80% of the quantity written on the label. *See* 21 C.F.R. § 101.9(g). In order to win this argument on a 12(b)(6) motion, the Defendants must persuade the Court that—taking Plaintiff's allegations as true—CBD "is a dietary supplement within the meaning of 21 U.S.C. §§ 321(ff)(3)(B)(i), that CBD is a naturally-occurring Class II nutrient within the meaning of the pertinent regulation, 21 C.F.R. § 101.9(g)(3), and that the CBD content declared on the Defendants' labels is at least equal to 80% of the stated value, 21 C.F.R. § 101.9(g)(4)(ii)." *Snyder*, 2020 WL 42239 at *5. But the Complaint does not explain how the CBD was incorporated into the Defendants products and it does not specify exactly how much CBD is in the products. Without these additional facts, and probably others, the Court cannot conclude that the products that Potter bought are class II nutrients subject to the 80% standard, and that the products contain 80% of the amount of CBD claimed on the labels. Therefore, the safe harbor does not apply at the motion to dismiss stage.

### ii. Unjust Enrichment

This Court rejects the Defendants' arguments that "the existence of an express contract" requires dismissal and that Potter cannot state a claim for unjust enrichment and a claim under FDUPTA at the same time. *See Snyder*, at

*4. First, the Court does not agree that Potter's claims are based on an express contract. (ECF No. 35 at 8.) Potter does not bring a breach of contract claim, or any other claim based on a contract. Instead, Potter explains that there was no meeting of the minds because she purchased the products as a result of deception, and that, as a result, the Defendants wrongfully deprived her of her money. *Id.* at *4. Second, the mere fact that Potter also brings a FDUPTA claim "does not establish that Plaintiffs have an adequate remedy at law." *Id.* Whether Potter prevails on the FDUPTA claim "is, at this stage, a speculative possibility." *Id.* (citing *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1337-38 (S.D. Fla. 2013) (Lenard, J.)). Thus, Potter has successfully stated a claim for unjust enrichment.

### iii. Breach of Warranty

To successfully allege a claim for breach of warranty, the complaint must allege: "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Moss v. Walgreen Co.*, 765 F. Supp. 2d. 1363, 1368 (S.D. Fla. 2011). The Defendants argue that Potter failed to state a claim because she failed to allege the first element—*i.e.* the sale of goods. (ECF No. 35 at 9.) However, Potter alleges that she "bought from the Diamond CBD website, in a single purchase order, Unflavored Diamond CBD Oil," Diamond CBD gummies, and chill gummies. (ECF No. 22 at ¶ 35.) She alleges that she paid $119.97 for her purchase. (*Id.*) These allegations, at the motion to dismiss stage, are sufficient to establish that a sale took place as required by the first element.

### C. Stay

The Defendants request that the Court exercise its discretion to stay this action pursuant to the primary jurisdiction doctrine pending federal CBD regulation and guidance. "The primary jurisdiction doctrine applies where a case implicates a federal agency's expertise with a regulated product." *Greenfield v. Yucutan Foods, L.P.*, 18 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014) (Williams, J). The doctrine's purpose is to allow courts "to take advantage of an agency's expertise, [to protect] the integrity of the regulatory scheme, and [to promote] uniformity." *Id.*

The Food and Drug Administration is currently crafting regulations to govern CBD products. In the last year, the FDA conducted a public hearing and created a task force on CBD regulation. US FOOD & DRUG ADMIN., Scientific Data and Information About Products Containing Cannabis or Cannabis-Derived Compounds; Public Hearing; Request for Comments, 84 Fed. Reg. 12969-01

(Apr. 3, 2019). The purpose of the hearing, which was held on May 31, 2019, is "to obtain scientific data or information about the safety, manufacturing, product quality, marketing, labeling, and sale of products containing cannabis." *Id.* at 12969. The Notice further states that "[r]egulatory oversight of products containing cannabis or cannabis-derived compounds is complex and involves multiple Federal and State agencies." *Id.* at 12970. The FDA is particularly concerned with the marketing and labeling of products containing cannabis-derived, including hemp-derived, compounds. *Id.* at 12970-12971. The FDA also is under pressure from Congress to expedite the rulemaking process. *See* S. REP. NO. 116-110 at 108 (2019) ("Within 90 days of enactment of this act, the FDA shall provide the Committee with a report regarding the agency's progress toward obtaining and analyzing data to help determine a policy of enforcement discretion and the process in which CBD meeting the definition of hemp will be evaluated for use in products. Within 120 days of enactment of this act, the FDA shall issue a policy of enforcement discretion with regard to certain products containing CBD meeting the definition of hemp as defined by section 297A of the Agricultural Marketing Act of 1964 (7 U.S.C. 1639)").[1]

The question for the Court to consider is whether it should exercise its discretion to apply the primary jurisdiction doctrine and stay the case pending the promulgation of the federal regulations described above. Potter argues that the current regulations and guidance regarding labeling are sufficient and that the forthcoming regulations will likely not have any effect on the issues in this case. (ECF No. 27 at 14-16.) She specifically states that "[w]hatever new FDA regulations may come about . . . [they] will not change the fact that manufacturers cannot state that their products contain a certain amount of CBD

---

[1] *See also Snyder*, 2020 WL 42239 at *6 n. 2 (citing Satish Kini, et al., *Cannabis and Hemp: Regulatory Green Light or Still a Pipe Dream?*, A.B.A. (Apr. 15, 2019), https://www.americanbar.org/groups/business_law/publications/blt/2019/05/cannabis/ (reporting that the FDA is under significant political pressure to expedite its policy-making regarding the regulation of hemp-derived products). More recently, Senate Majority Leader Mitch McConnell moved to include report language in the FY2020 appropriations bill requiring the FDA to hasten progress toward regulating the market for CBD products. AIMED ALLIANCE, *Congressional Leaders Pressure FDA to Act Quickly on CBD Regulation*, https://aimedalliance.org/congressional-leaders-pressure-fda-to-act-quickly-on-cbd-regulation/ (last visited Jan. 2, 2020)).

when they actually contain significantly less." (ECF No. 27 at 17.) The Court agrees.

The FDA is eager to determine issues such as whether CBD products pose safety risks, how the mode of delivery affects safety, whether there are dosage considerations related to safety, whether there is a need for manufacturing standards, and whether there are standardized definitions for the ingredients in, for example, hemp oil. *Snyder*, at *7 (citing U.S. FOOD & DRUG ADMIN., *FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD)* (content current as of Dec. 31, 2019), https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd). However, the FDA has not expressed interest in modifying the disclosure requirements for nutrients or additives, nor have the Defendants pointed to any regulation under consideration that may affect these specific food labeling requirements and thus impact this case. (*see generally*, ECF No. 26.) Even if new regulations change the requirements for CBD products' labels, such as by requiring a safety warning or information on the products' manufacturing, they seem unlikely to change the food labeling requirements at issue in this case, namely 21 C.F.R. § 101.9(g). Thus, the Court declines to grant a stay of this case pending the promulgation of new FDA regulations because the new regulations are unlikely to affect the outcome of this case.

## 4. Conclusion

In sum, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 22**). The Court dismisses Potter's claim for injunctive relief and her claims stemming from products that she did not purchase. The Court denies the motion to dismiss in all other respects. The Court further **denies** the motion's request for a stay.

**Done and ordered** at Miami, Florida, on March 27, 2020.

Robert N. Scola, Jr.
United States District Judge